UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RAMON S. BARACIO,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | No. ED CV 05-648-PLA<br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on August 10, 2005, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on June 6, 2006. Pursuant to the Court's Order, the parties filed a Joint Stipulation on April 14, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

/

II.

## BACKGROUND

Plaintiff was born on July 11, 1950. [Administrative Record ("AR") at 31, 217.] He attended school through part of the second grade while living in Mexico. [AR at 31-32, 74.] He previously worked as a forklift driver. [AR at 32, 77-78.]

On June 3, 2003, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments. [AR at 62-64, 217-19.] He alleged that he has been unable to work since January 29, 1999, due to "back problems, diabetes, high blood pressure, high cholesterol, [and] heart problems." [AR at 62, 67-68.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on December 1, 2004, at which plaintiff appeared with counsel and testified on his own behalf. [AR at 28-41.] On February 22, 2005, the ALJ found that plaintiff was not disabled because he retains the residual functional capacity[1] to perform light work.[2] [AR at 12-19.] When the Appeals Council denied review on May 16, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 4-6.]

III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

---

[1] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2] Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.    THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of his disability. [AR at 13, 18.] At step two, the ALJ concluded that plaintiff has the "severe" impairments of chest pain and aortic stenosis.[3] [AR at 15.] At step three, the ALJ found that plaintiff's impairments do not meet or equal the requirements of any of the impairments in the Listings. [AR at 15, 18.] The ALJ further determined that plaintiff retains the residual functional capacity to perform light work, but cannot climb ladders, ropes or scaffolds. [AR at 16, 18.] At step four, the ALJ determined that plaintiff is unable to perform his past relevant work. [Id.] At step five, the ALJ concluded that based on plaintiff's residual functional capacity to perform light work, there are a significant number of jobs in the

---

[3] Aortic stenosis is defined as "the narrowing or obstruction of the heart's aortic valve, which prevents it from opening properly and blocks the flow of blood from the left ventricle to the aorta." See Medline Plus, Medical Encyclopedia at http://www.nlm.nih.gov/medlineplus/ency/article/000178.htm.

national economy that he can perform. [AR at 17-18.] Accordingly, the ALJ found plaintiff not disabled. [AR at 18-19.]

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ: (1) improperly rejected the opinions of his treating physicians; (2) failed to properly consider plaintiff's obesity in the disability analysis; and (3) failed to obtain vocational expert testimony regarding the effect of his nonexertional impairments on his ability to work. Joint Stipulation ("Joint Stip.") at 2. For the reasons discussed below, the Court agrees that the ALJ failed to properly consider the treating source opinions and plaintiff's obesity, and remands this matter for further proceedings.

**A.    THE TREATING PHYSICIANS' OPINIONS**

Plaintiff argues that the ALJ improperly rejected two of his treating physicians' opinions: (1) a Physical Work Related Activities Questionnaire dated November 4, 2003, and (2) a Cardiac Residual Functional Capacity Questionnaire dated February 19, 2004. Joint Stip. at 3-7.

**1.    The November 2003 questionnaire**

In the November 2003 questionnaire, an unidentified physician set forth significant limitations with respect to plaintiff's ability to work.[4] [AR at 160-62.] According to the doctor, plaintiff's lifting abilities were limited to 20 pounds occasionally and less than 10 pounds frequently. In an eight hour day, plaintiff would be able to stand and walk for less than two hours,

---

[4] Plaintiff argues that the ALJ should be directed to further develop the record in order to ascertain additional information regarding this treating physician, such as the physician's "specialty, name and treating relationship with Plaintiff." Joint Stip. at 5-6. The Court does not agree that the ALJ failed in his duty to develop the record on the mere basis that this physician has not been identified by name. However, because remand of this matter is in order for other reasons (see infra), the ALJ should obtain any additional records for further evaluation of the November 2003 assessment that the ALJ believes are necessary.
    The Court notes, however, that due to the similarity of the unidentified physician's signature and that of Dr. Ballaine, it appears likely that this questionnaire was filled out by Dr. Ballaine. (Compare, e.g., AR at 162 with AR at 193, 210).

and sit about four hours. His ability to reach, handle, and push/pull would be limited, and he would likely be absent from work more than three times per month on account of his impairments. In the portion of the questionnaire stating "[w]hat medical findings support the limitations described above?," the doctor wrote: "low back pain," "angina,"[5] and "aortic valve [unintelligible]." [AR at 161.]

### 2. The February 2004 questionnaire

The February 2004 questionnaire bears two names: Eve Traill, a physician's assistant, and Dr. Douglas Ballaine. [AR at 155-59.] Plaintiff maintains that the questionnaire was completed by both Dr. Ballaine and Ms. Traill, and thus amounts to a treating physician's opinion. Joint Stip. at 3. Respondent contends that only Ms. Traill prepared the form, and there is no indication that Dr. Ballaine endorsed or ever saw the opinion. Joint Stip. at 7-8.

The individual who filled out the form set forth the following diagnosis for plaintiff: diabetes mellitus II, angina pectoris, hypertriglyceridemia, and aortic sclerosis.[6] The individual further identified the following clinical findings that support the diagnosis: an echocardiogram taken on August 21, 2003, showing that plaintiff has aortic valve sclerosis and mild aortic regurgitation,[7] and also on that same date, a triglyceride level of 821 and a glycosylated hemogloblin (HgbAlc) level of 10.0. [AR at 119-20, 148, 155.] According to the February 2004 questionnaire, plaintiff is able to stand/walk less than two hours in a workday, and sit for about four hours; he can frequently lift less than ten pounds and occasionally lift between ten and twenty pounds; and his impairments would likely cause him to miss work more than three times per month. [AR at 157-58.]

---

[5] Angina is "a specific type of chest discomfort caused by inadequate blood flow through the blood vessels (coronary vessels) of the heart muscle (myocardium)." See Medline Plus, Medical Encyclopedia at http://www.nlm.nih.gov/medlineplus/ency/article/001107.htm.

[6] Aortic sclerosis is the thickening of the aortic valve. See Dorland's Illustrated Medical Dictionary, 1611 (29th ed. 2000).

[7] Aortic regurgitation is "a heart valve disease in which the aortic valve weakens or balloons, preventing the valve from closing tightly. This leads to backward flow of blood from the aorta (the largest blood vessel) into the left ventricle (the left lower chamber of the heart)." See Medline Plus, Medical Encyclopedia at http://www.nlm.nih.gov/medlineplus/ency/article/000179.htm.

### 3. The ALJ's evaluation of the two questionnaires

In the hearing decision, the ALJ considered and rejected both the November 2003 and February 2004 questionnaires. With respect to the November 2003 opinion, the ALJ stated that he gave it no weight "because there are no medical records to support such a limitation and the physician opinion is not consistent with the medical record as a whole." [AR at 14.] As for the February 2004 questionnaire, the ALJ likewise gave it no weight, and stated "the physician assistant's opinion is not based on the objective record as a whole. Even though the claimant's echocardiogram showed aortic valve sclerosis, there is no pathology to support the limitations as set forth by the physician assistant." [Id.]

In the portion of the ALJ's decision pertaining to plaintiff's credibility analysis, the ALJ again mentioned the two questionnaires, stating:

> The undersigned gives little weight to the assessment dated in November 2003 (unable to read physician's signature), where the physician stated that the claimant could perform less than sedentary work. Also, the undersigned gives little weight to the assessment dated in February 2004, where the physician stated that the claimant could perform less than sedentary work. The undersigned finds that the physician's opinions were not based on the objective findings or the medical record as noted ..."

[AR at 16.]

In determining that plaintiff is not disabled, the ALJ gave "significant weight" to the opinion of the consultative examiner, Dr. Bahaa Girgis, who performed an internal medical evaluation of plaintiff on June 12, 2003, which returned mostly normal results. [AR at 103-06.] During that exam, plaintiff was observed to be "in no acute distress," and was able to walk and move "easily." [AR at 104.] The range of motion in his back, hips, and knees was normal, and the straight leg raising test was negative at 90 degrees. [AR at 104-05.] Dr. Girgis observed that plaintiff's hypertension was uncontrolled, but that plaintiff had no diabetic retinopathy or neuropathy. As for plaintiff's complaint of low back pain, Dr. Girgis noted: "Due to muscle strain, based on the history and physical exam today patient has normal gait and normal neurological exam." [AR at 105.] The doctor concluded that plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand/walk for six hours in an eight hour day; and sit for six hours in an

eight hour day. [AR at 106.] In his report, Dr. Girgis did not discuss or otherwise take note of plaintiff's aortic stenosis and chest pain.

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians:  (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians).  See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830.  As a general rule, more weight should be given to the opinion of a treating physician than to the opinions of doctors who do not treat the plaintiff.  Lester, 81 F.3d at 830; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) ("because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.").

However, an ALJ need not give controlling weight to the opinion of a treating physician. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004).  The treating physician's opinion "is not ... necessarily conclusive as to ... the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted).  "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Id. at 751. Where the record contains conflicting medical evidence, the ALJ is charged with determining credibility and resolving the conflict.  Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). When the treating physician's opinion is controverted by another physician's opinion, the ALJ may reject it by setting forth specific and legitimate reasons for doing so which are based on substantial evidence in the record.  Smolen, 80 F.3d at 1285.

Here, the ALJ fairly summarized the record of medical evidence, specifically noting that plaintiff underwent numerous tests for cardiac related conditions that returned unremarkable results.  For example, plaintiff's cardiolite stress test conducted on January 8, 2002, returned results within normal limits. [AR at 142.]  A myocardial perfusion study dated January 10, 2002, showed no evidence of post stress or resting defect, and a left heart catheterization and coronary angiogram on April 5, 2004, revealed no significant problems. [AR at 141, 176-77.]  According to one physician, plaintiff's chest pain was noncardiac. [AR at 183.]  The ALJ also observed the

following: that on April 6, 2004, and October 12, 2004, clinical notes reflect that plaintiff's diabetes and hypertension were controlled, and that an x-ray dated April 4, 2002, showed only degenerative changes in plaintiff's spine (from L4 to S1). [AR at 14-15, 137, 171, 198.]

In his consideration and rejection of the two disability opinions at issue here, however, the ALJ failed to provide legally sufficient reasons. First, as mentioned above, in discrediting the November 2003 opinion, the ALJ stated there are "no medical records to support such a limitation" and that the opinion "is not consistent with the medical record as a whole." [AR at 14.] By offering such a broad basis for rejection, the ALJ failed not only to specifically identify any objective factors negating the opinion, but also failed to explain how those factors, if any, contradict the doctor's assessment. The ALJ must do more than offer his conclusions. Instead, he must "set forth his own interpretations and explain why they, rather than the doctor['s], are correct. Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988). Accordingly, the grounds cited by the ALJ in dismissing the November 2003 opinion were too broad and conclusory to withstand remand. This result is even more warranted in light of the apparent authorship of the 2003 questionnaire by Dr. Ballaine. See McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) (finding that the ALJ rejecting the treating physician's opinion on the grounds that it was contrary to clinical findings in the record was "broad and vague, failing to specify why the ALJ felt the treating physician's opinion was flawed"); Embrey, 849 F.2d at 421-22 (conclusory reason "does not achieve the level of specificity" required to justify an ALJ's rejection of a treating source's medical opinion). See also Embrey, 849 F.2d at 422 ("The subjective judgments of treating physicians are important, and properly play a part in . . . medical evaluations. Accordingly, the ultimate conclusions of these physicians must be given substantial weight.").

The ALJ's treatment of the February 2004 opinion is similarly flawed. As an initial matter, however, it is not clear from the hearing decision whether the ALJ attributes this opinion to the physician's assistant, or to Dr. Ballaine. [Cf. AR at 14 (discussing the "physician assistant's opinion") and AR at 16 (indicating that in the February 2004 assessment "the physician stated . . .") (emphasis added).] The distinction between the two has importance, as a physician is considered an "acceptable" medical source, while a physician's assistant is only considered an

"other" source. 20 C.F.R. §§ 404.1513(a),(d), 416.913(a),(d); see also Gomez v. Chater, 74 F.3d 967, 970 (9th Cir. 1996). The ALJ is permitted to give medical opinions from "acceptable" sources more weight than those from "other" sources. Gomez, 74 F.3d at 970-71. To discount the testimony of an "other" medical source, the ALJ must set forth reasons germane to that witness. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993).

The ALJ rejected the February 2004 opinion because it was "not based on the objective record as a whole" and since "even though [plaintiff's] echocardiogram showed aortic valve sclerosis, there is no pathology to support the limitations ..." [AR at 14.] Again, the ALJ's rejection is overly broad as he failed to specifically identify any contradictory clinical findings and explain how those findings negate the conclusions set forth in the assessment. The Court further observes that plaintiff's impairments noted in the assessment -- diabetes mellitus II, angina pectoris, hypertriglyceridemia, and aortic sclerosis -- have support in the record. Thus, to the extent the work restrictions set forth in the assessment are attributed directly to these impairments, the ALJ's broad conclusion that the assessment was *not* based on the record, without more, is insufficient.

While the ALJ may have determined that the results of plaintiff's cardiac tests (i.e., the cardiolite stress test; the myocardial perfusion study; and the left heart catheterization and coronary angiogram) were enough to discredit the November 2003 and February 2004 opinions, the ALJ failed to offer any interpretation detailing why these test results do not support the described limitations, or otherwise explain why plaintiff has a physical functional capacity greater than indicated in the assessments. In addition, although the ALJ gave significant weight to Dr. Girgis' opinion, the Court notes that Dr. Girgis' report contained no reference to plaintiff's chest pain or aortic stenosis. Accordingly, it appears that, unlike the February 2004 and November 2003 opinions, Dr. Girgis did not factor in these impairments when reaching his conclusions concerning plaintiff's limitations. In light of this apparent material difference between Dr. Girgis' report and the two rejected opinions, it was necessary for the ALJ to set forth the reasons why, if any, Dr. Girgis' findings were sufficient to support the rejection.

1 Accordingly, whether the February 2004 opinion is attributed to the physician's assistant or to Dr. Ballaine, the Court concludes that the reasons given by the ALJ for rejecting it were neither germane nor specific and legitimate.[8] Likewise, the Court is persuaded that the ALJ also failed to provide the requisite specific and legitimate reasons in rejecting the November 2003 assessment. See Magallanes, 881 F.2d at 751. Remand is appropriate for further consideration of these opinions.

## B. OBESITY

The Court is also persuaded that remand is in order to allow the ALJ to consider plaintiff's obesity in the disability analysis. According to the record, plaintiff is 5 feet 5 inches tall, and weighs around 225 pounds. [See AR at 104, 202, 209-10.] Plaintiff's treating sources consistently noted that he is obese and that his obesity is a cardiac risk factor. [See AR at 117, 122, 125, 152, 164, 184, 185-86, 188, 209.] According to one treating record, plaintiff was advised to maintain a calorie-restricted "cardiac diet" and to record his daily weight. [AR at 188.]

Obesity is no longer a listed impairment, nor was it at the time of the ALJ's decision. See Revised Medical Criteria for Determination of a Disability, Endocrine System and Related Criteria, 64 Fed.Reg. 46122 (1999) (effective October 25, 1999) ("We are deleting listing 9.09, "Obesity," from appendix 1, subpart P of part 404, the "Listing of Impairments" (the listings).") The SSA, however, clarified its intent with respect to the ALJ's consideration of obesity:

> Our purpose in making these changes is to ensure that adjudicators understand that we consider obesity to be a medically determinable impairment that can be the basis for a finding of disability, and that obesity in combination with other impairments must be considered when evaluating disability at the listings step and other steps of the sequential evaluation process.

Id. at 46123. Therefore, the prefaces of the musculoskeletal, respiratory, and cardiovascular body system listings were revised to provide guidance about the potential effects obesity has in causing or contributing to impairments in those body systems. Id. Likewise, Social Security Ruling 02-

---

[8] On remand, the Court directs the ALJ to attempt to specifically identify the individual who prepared the opinion, and in turn, evaluate the opinion according to the relevant standard.

11

01p[9] states that adjudicators must consider obesity in all steps of the sequential evaluation process. Social Security Ruling 02-01p, 2000 WL 628049, at *3 (2002).

In the second step of the disability analysis, the ALJ must determine whether the claimant suffers from a severe impairment or from a *combination of impairments* that is severe. 20 C.F.R § 404.1520(c) (emphasis added). When determining whether the claimant has a severe combination of impairments, the ALJ must consider the combined effect of all of the impairments on his ability to function, "without regard to whether each alone was sufficiently severe." Smolen, 80 F.3d at 1290. In turn, when determining if a claimant meets a listing at step three, "the ALJ must explain adequately ... the combined effects of the impairments." Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003) (quoting Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir.1990)).

When the record contains evidence of obesity, the ALJ must determine the effect of the claimant's obesity upon his other impairments, his ability to work, and his general health. Celaya, 332 F.3d at 1182; see also 20 C.F.R. §§ 404.1545(e), 416.945(e) ("we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."). Here, in addition to plaintiff's "severe" impairments of aortic stenosis and chest pain, plaintiff also alleged that he suffers from diabetes, high cholesterol, hypertension, and low back pain. Given the potential effect of obesity on these conditions, the ALJ had a responsibility to consider their interactive effect. The ALJ, however, made no reference to obesity anywhere in the hearing decision. Although plaintiff has legal counsel, the Ninth Circuit has expressly stated that the ALJ's duty to develop the record applies "even when the claimant is represented by counsel." Celaya, 332 F.3d at 1183 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983) (citations omitted)). In addition, despite plaintiff's failure to allege obesity in his benefits applications or at the administrative hearing, enough evidence of obesity is present

---

[9] Social Security Ruling 02-01p, Evaluation of Obesity, was published in the Federal Register on September 12, 2002. That ruling superseded the Commissioner's previous ruling regarding the evaluation of obesity, Social Security Ruling 00-3p, first published on May 15, 2000. Social Security Rulings do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

throughout the record to give the ALJ sufficient notice of this condition.  See Celaya, 332 F.3d at 1182 (finding evidence of obesity implicit in the record, even though plaintiff did not raise it as a disabling factor); see also Clifford v. Apfel, 227 F.3d 863, 873 (7th Cir. 2000) ("While [the claimant] did not claim obesity as an impairment when filing her Disability Report, the evidence should have alerted the ALJ that [she] had another relevant impairment that could contribute to the cumulative effect of her other impairments.").

Accordingly, because the ALJ did not assure that plaintiff's interests were considered by failing to acknowledge plaintiff's obesity and weigh its interactive effect on his other impairments, both existing and alleged, the Court finds that remand on this issue is also warranted.  On remand, the ALJ is directed to consider and discuss the effect of plaintiff's obesity on his other impairments and on his residual functional capacity.

Because the ALJ's determination upon remand may affect other steps in the sequential analysis, the Court does not consider plaintiff's remaining issue at this time.

## VI.

## REMAND FOR FURTHER PROCEEDINGS

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision.  See Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984).  In this case, remand is appropriate to further assess the November 2003 and February 2004 questionnaires, and plaintiff's obesity.  The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: September 12, 2006                                          /S/
                                                                                        PAUL L. ABRAMS
                                                                       UNITED STATES MAGISTRATE JUDGE